Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| San Carlos Mortgage, LLC **Recurrida** V. La Sucesión Del Finado Slavisa Curcic Pecanac, Evelyn Torres Irrizarry por sí y en la cuota viudal ususfructuaria, Jane Doe y otros **Peticionarios** | TA2025CE00909 | **CERTIORARI** Procedente del Tribunal de Primera Instancia, Sala Superior de Caguas Civil Núm.: CG2019CV01670 (702) Sobre: Cobro de Dinero – Ordinario, Ejecución de Hipoteca |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de enero de 2026.

El 16 de diciembre de 2025, la sucesión del Sr. Slavisa Curcic Pecanac (sucesión Curcic o los peticionarios) comparecieron ante nos mediante *Petición de Certiorari* y solicitaron la revisión de una *Resolución* que se dictó y notificó el 28 de octubre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar la solicitud de relevo de sentencia que presentó la sucesión Curcic.

Por los fundamentos que expondremos a continuación, expedimos el recurso de epígrafe y ***revocamos*** el dictamen recurrido.

**I.**

El 14 de mayo de 2019, Scotiabank de Puerto Rico presentó una *Demanda* en contra de la Sra. Evelyn Torres Irrizarry (señora Torres) y la sucesión Curcic sobre cobro de dinero y ejecución de

hipoteca por la vía ordinaria.[1] Allí, alegó que en o alrededor del día 30 de junio de 2011, la señora Torres y los peticionarios suscribieron un pagaré por la suma principal de $316,700.00 con número de préstamo 600136717. Sostuvo que, dicho pagaré fue asegurado mediante hipoteca sobre una propiedad ubicada en el Municipio de Caguas.

No obstante, indicó que la señora Torres y la sucesión Curcic incurrieron en incumplimiento contractual por haber dejado de pagar las mensualidades desde el 1 de septiembre de 2018. En consecuencia, declaró la totalidad de la deuda vencida que ascendía a $271,947.28 de principal, más los intereses pactados de 4.000% por ciento anual desde el día 1 de agosto de 2018, la suma de dinero para primas por seguro FHA, de aplicar, y contra riesgos, más recargos por demora, más los intereses devengados y la cantidad estipulada de $31,670.00 para costas, gastos y honorarios de abogado. Por lo anterior, solicitó al TPI que condenara a la señora Torres y la sucesión Curcic el pago de las cantidades antes descritas y que procediera a vender en pública subasta la propiedad hipotecada.

Posteriormente, el 24 de enero de 2020, Scotiabank fue sustituido por Oriental Bank y este último por San Carlos Mortgage, LLC (San Carlos o recurrido) el 31 de marzo de 2022.[2]

Tras varios trámites procesales los cuales no son necesarios discutir, el 15 de febrero de 2023, el TPI dictó una *Sentencia Final* que se notificó el 8 de marzo de 2023.[3] Mediante esta, declaró Ha Lugar la *Demanda* que presentó el recurrido y ordenó el pago de las partidas solicitadas en la reclamación de epígrafe y la ejecución de la propiedad mediante venta en pública subasta.

---

[1] *Véase*, Entrada Núm. 1, SUMAC TPI.
[2] *Véase*, Entrada Núm. 35 y 54, SUMAC TPI.
[3] *Véase*, Entrada Núm. 66, SUMAC TPI.

El 10 de mayo de 2023, San Carlos presentó una *Moción para que se dicte Orden de Embargo* en contra de la propiedad hipotecada.[4] Atendido el escrito, el 10 de mayo de 2023 y notificada el 16 de mayo de 2023, el TPI emitió una *Orden*.[5] En esta, declaró Con Lugar la moción de embargo y, en consecuencia, ordenó y decretó el embargo de todo título, participación o interés de los peticionarios en el inmueble hipotecado.

El 13 de noviembre de 2024, San Carlos presentó una *Moción solicitando Ejecución de Embargo*.[6] Alegó que el importe de la sentencia no había sido satisfecho total o parcialmente por lo que, habiendo transcurrido el término para solicitar su apelación o revisión, el dictamen advino final, firme y ejecutable. A tales efectos, solicitó al TPI que ordenara la Ejecución de Sentencia, expidiera la Orden de Venta de Bienes y ordenara al Secretario expedir el Mandamiento de Ejecución de la sentencia dictada en el caso de epígrafe, para que procedieran a la ejecución del embargo mediante la venta en pública subasta.

En respuesta, el 2 de diciembre de 2024, la señora Torres presentó una *Oposición a moción solicitando Ejecución de Embargo, solicitud de Relevo de Sentencia Bajo la Regla 49.2 de Procedimiento Civil por ausencia de partes indispensables y sobre otros asuntos*.[7] Allí, alegó que el causante tenía un hijo de una relación matrimonial previa llamado Stefan Curcic (señor Stefan), cuya madre no era la señora Torres. Sostuvo que, la existencia de dicho coheredero constaba en la *Resolución de Declaratoria de Herederos* dictada en el caso civil núm. EJV-2016-1005 (701) del Tribunal de Primera Instancia, Sala Superior de Caguas con fecha del 1 de diciembre de 2016. Incluso, señaló que esta información era del conocimiento del

---

[4] *Véase*, Entrada Núm. 76, SUMAC TPI.
[5] *Véase*, Entrada Núm. 78, SUMAC TPI.
[6] *Véase*, Entrada Núm. 97, SUMAC TPI.
[7] *Véase*, Entrada Núm. 99, SUMAC TPI.

recurrido, toda vez que al señor Stefan se le informaba de los procedimientos en el Centro de Mediación de Conflictos del Poder Judicial a su correo electrónico. Planteó que, el señor Stefan como coheredero del señor Curcic era parte indispensable en el caso de epígrafe, por ende, debió ser incluido en la demanda y ser debidamente emplazado, lo cual no ocurrió en ningún momento.

Por otro lado, indicó que el inmueble de interés era su residencia principal, por lo que otorgó un acta para establecer el derecho de hogar seguro sobre dicha propiedad con fecha de 11 octubre de 2024. Esbozó que, por su naturaleza constitutiva, la hipoteca tenía que constar en escritura pública y estar inscrita en el Registro de la Propiedad. Sostuvo que en el caso de autos no había una hipoteca inscrita y, en consecuencia, la deuda objeto de la acción de epígrafe era una personal en contra de la señora Torres y la sucesión Curcic, por lo que el derecho de hogar seguro era reclamable en este caso. Ante ello, solicitó al TPI que declarara Ha Lugar el relevo de Sentencia solicitado y que declarara No Ha Lugar la moción solicitando ejecución de embargo radicada por San Carlos. Además, solicitó que se ordenara la reapertura del presente caso al trámite civil ordinario.

Atendida la oposición, el 23 de diciembre de 2024, el TPI emitió una *Orden* en la cual dispuso lo siguiente: "Parte Demandante tenga 20 días para replicar".[8]

El 27 de enero de 2025, San Carlos presentó una *Moción en cumplimiento de Orden y solicitud de remedios*.[9] En lo pertinente, se allanó a la solicitud de relevo de la *Sentencia* dictada el 15 de febrero de 2023 por falta de parte indispensable y, por consiguiente, solicitó enmendar la demanda para incluir al señor Stefan. A su vez, solicitó

---

[8] *Véase*, Entrada Núm. 100, SUMAC TPI.
[9] *Véase*, Entrada Núm. 104, SUMAC TPI.

incluir la causa de acción sobre ejecución de hipoteca, debido a que ya constaba inscrita.

El 4 de febrero de 2025 y notificada el 10 de febrero de 2025, el TPI dictó una *Orden*.[10] En esta, declaró No Ha Lugar la moción que presentó San Carlos el 27 de enero de 2025. De igual forma, ordenó lo siguiente: "Se ordena la sustitución del heredero desconocido de la Sucn. de Slavisa Curcic Pecanac denominado Richard Roe por el heredero ahora conocido Stefan Curcic en el epígrafe del caso".

El 22 de abril de 2025, la señora Torres presentó una *Renovada oposición a Ejecución de Embargo, Reiterada Moción de Relevo de Sentencia bajo la Regla 49.2 de Procedimiento Civil por Nulidad de Sentencia ante ausencia de Parte Indispensable y solicitud de que se deje sin efecto Mandamiento de Ejecución por el mencionado fundamento de Nulidad de Sentencia*.[11] En síntesis, reiteró las alegaciones que presentó en su solicitud del 2 de diciembre de 2024.

El 25 de abril de 2025, San Carlos presentó una *Réplica a Renovada Oposición*.[12] Así las cosas, el 26 de abril de 2025 y notificada el 28 de abril de 2025, el TPI emitió una *Resolución Final* en la cual resolvió que: "A la Renovada Oposición de la parte demandada presentada el 22 de abril de 2025 se declara No Ha Lugar".[13]

Inconforme con lo anterior, el 22 de mayo de 2025, la señora Torres y la sucesión Curcic acudieron ante nos mediante una *Petición de Certiorari* bajo el alfanumérico KLCE202500551 junto con una solicitud de auxilio de jurisdicción.[14]

---

[10] *Véase*, Entrada Núm. 106, SUMAC TPI.
[11] *Véase*, Entrada Núm. 113, SUMAC TPI.
[12] *Véase*, Entrada Núm. 114, SUMAC TPI.
[13] *Véase*, Entrada Núm. 115, SUMAC TPI.
[14] *Véase*, Entrada Núm. 117, SUMAC TPI.

Examinada la moción de auxilio de jurisdicción, el 22 de mayo de 2025, emitimos una *Resolución* donde la declaramos Ha Lugar y ordenamos la paralización de la venta judicial del inmueble del interés.[15]

Así las cosas, el 12 de junio de 2025 y notificada el 15 de octubre de 2025, emitimos una *Resolución* mediante la cual expedimos el recurso de *certiorari* y procedimos a revocar el dictamen recurrido.[16] En particular, ordenamos al foro primario que atendiera el escrito que presentó la señora Torres el 22 de abril de 2025 y emitiera un dictamen con determinaciones de hechos y conclusiones de derecho.

Recibido el mandato, el 28 de octubre de 2025, el TPI emitió y notificó una *Resolución.*[17] Allí, consignó sus determinaciones de hechos y en conjunto con el derecho aplicable juzgó que el emplazamiento por edicto a la señora Torres y a los demás miembros de la sucesión Curcic se realizó conforme a derecho. A tales efectos, procedía la sustitución del señor Stefan y que esto se retrotraería a la fecha de la radicación de la demanda. Por lo que, determinó que no procedía el planteamiento de falta de parte indispensable. En vista de ello, declaró No Ha Lugar la solicitud de relevo de sentencia presentada por la señora Torres y ordenó la continuación del procedimiento post-sentencia.

Insatisfecha, el 12 de noviembre de 2025, la sucesión Curcic presentó una *Moción de Reconsideración de Resolución Final declarando "No Ha Lugar" planteamiento de Nulidad de Sentencia por dejar de acumular una Parte Indispensable en el caso".*[18] No obstante, el 17 de noviembre de 2025, el TPI emitió y notificó una

---

[15] *Véase,* Entrada Núm. 116, SUMAC TPI.
[16] *Véase,* Entrada Núm. 129, SUMAC TPI.
[17] *Véase,* Entrada Núm. 131, SUMAC TPI.
[18] *Véase,* Entrada Núm. 132, SUMAC TPI.

*Orden* mediante la cual declaró No Ha Lugar la moción de reconsideración.[19]

Aún en desacuerdo, el 16 de diciembre de 2025, los peticionarios presentaron el recurso de epígrafe y formularon el siguiente señalamiento de error:

> **Erró el TPI al emitir la Resolución de 28 de octubre de 2025 (Entrada Núm. 131 TPI) en la cual denegó con carácter definitivo el planteamiento de nulidad de sentencia formulado por la parte demandada peticionaria mediante escrito de 2 de diciembre de 2024, por cuanto surge con toda claridad del expediente judicial que la sentencia dictada en este caso con fecha de 15 de febrero de 2023 (Entrada Núm. 66 TPI) es nula ab initio por razón de haberse omitido una parte indispensable en la demanda y por no haber sido nunca emplazada dicha parte, a saber, el SR. STEFAN CURCIC, hijo de un primer matrimonio del difunto SLAVISA CURCIC PECANAC, residente de Canadá, cuyo hijo es miembro de la Sucesión hereditaria demandada.**

Cabe precisar que, el 17 de diciembre de 2025, los peticionarios presentaron una *Moción en Auxilio de Jurisdicción* solicitando la paralización de la venta judicial pautada. Atendida la referida solicitud, ese mismo día, emitimos una *Resolución* declarándola No Ha Lugar en este momento. Por otra parte, emitimos una *Resolución* concediéndole a la recurrida hasta el 29 de diciembre de 2025 para presentar su postura en cuanto al recurso. Oportunamente, San Carlos presentó un *Alegato en Oposición a Recurso de Certiorari* y negó que el TPI cometiera el error que los peticionarios le imputaron.

Con el beneficio de la comparecencia de ambas partes, procedemos a atender el asunto ante nos. *Veamos.*

## II.

### -A-

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de

---

[19] *Véase*, Entrada Núm. 133, SUMAC TPI.

derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto, ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

Es importante destacar que, al interpretar la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, el Tribunal Supremo resolvió que "las resoluciones atinentes a asuntos postsentencia [como la que tenemos ante nuestra consideración] no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*. De otra parte, por emitirse este tipo de decisión luego de dictada la sentencia, usualmente tampoco cualifica para el recurso de apelación provisto para dictámenes judiciales finales. Se corre el riesgo, por lo tanto, de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en el proceso." *IG Builders et. al. v. BBVAPR*, 185 DPR 307, 339 (2012).

Establecido lo anterior, al determinar si procede expedir o denegar un recurso de *certiorari* en el cual se recurre de un asunto postsentencia, debemos evaluar únicamente los criterios

enmarcados en la Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, págs. 59-60, 215 DPR ___ (2025). Íd. La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró, supra.* La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando éste haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009).

**-B-**

La Regla 49.2 de Procedimiento Civil, *supra,* establece el mecanismo procesal disponible para solicitar al Tribunal de Instancia el relevo de los efectos de una sentencia. *Pérez Ríos et al.*

*v. CPE,* supra, pág. 214. Específicamente, la aludida Regla dispone lo siguiente:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> a) error, inadvertencia, sorpresa o negligencia excusable;
>
> b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
>
> c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;
>
> d) nulidad de la sentencia;
>
> e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o
>
> f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.
>
> [...]. 32 LPRA. Ap. V, R. 49.2.

Para que proceda el relevo de sentencia bajo la referida regla*,* "es necesario que el peticionario aduzca, al menos, una de las razones enumeradas en esa regla para tal relevo". *García Colón et al. v. Sucn. González,* 178 DPR 527, 540 (2010). Además, una moción basada en la aludida Regla debe estar bien fundamentada, pues sabido es que los dictámenes emitidos por nuestros tribunales gozan de una presunción de validez y corrección. *Cortés Piñeiro v. Sucesión A. Cortés*, 83 DPR 685, 690 (1961).

Cabe precisar que, como regla general, dicha acción tiene que ejercitarse dentro los seis (6) meses siguientes al archivo y notificación de la sentencia. *HRS Erase v. Centro Médico del Turabo*, 205 DPR 689, 698 (2020). Sin embargo, a modo de excepción, tal norma cede cuando se trata de una sentencia que adolece de

nulidad. Íd. Entiéndase, "si una sentencia es nula, la parte promovedora de una moción de relevo de sentencia no está limitada por el término de seis meses expuesto." Íd., pág. 699.

A tenor con lo antes expuesto, es importante resaltar que, independientemente de la existencia de uno de los fundamentos expuestos en la regla, relevar a una parte de los efectos de una sentencia es una decisión discrecional, salvo en los casos de nulidad o cuando la sentencia ha sido satisfecha. *Rivera v. Algarín*, 159 DPR 482, 490 (2003).

**En lo pertinente a la controversia ante nuestra consideración, el Tribunal Supremo de Puerto de Puerto Rico resolvió que los tribunales vienen llamados a relevar de una sentencia cuando se trata de un dictamen que ha quebrantado el debido proceso de ley de una parte, como lo sería una sentencia dictada sin haberse acumulado una parte indispensable.** (Énfasis suplido) *SLG Rivera-Pérez v. SLG Díaz-Doe et al.*, 207 DPR 636, 657 (2021). Así pues, la omisión de una parte indispensable repercute en el resquebrajamiento del debido proceso de ley que al fin y al cabo es un derecho fundamental que justifica su relevo por razón de nulidad de la sentencia. **Una sentencia que se dicte sin una parte indispensable hace que el tribunal que la dictó carezca de jurisdicción sobre la persona, tornando la sentencia en una nula.** (Énfasis suplido) J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan, Publicaciones JTS, 2011, T. II, pág. 1418.

**-C-**

La Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, regula todo lo relacionado con la falta de parte indispensable en un pleito. En lo pertinente, la aludida regla dispone que "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como

demandantes o demandadas, según corresponda". Íd. Es decir, una parte indispensable es "aquella de la cual no se puede prescindir y cuyo interés en la cuestión es de tal magnitud, que no puede dictarse un decreto final entre las otras partes sin lesionar ni afectar radicalmente sus derechos". *Pérez Ríos et al. v. CPE*, 213 DPR 203, 213 (2023).

Cónsono con lo anterior, el Tribunal Supremo ha explicado que:

> [e]l tercero ausente [en el pleito] debe tener [tal] interés común en [este] que convierte su presencia en un requisito indispensable para impartir justicia completa o de tal orden que impida la confección de un decreto sin afectarlo. La justicia completa es aquella entre las partes y no la que se refiere a una parte y al ausente. El interés común tiene que ser uno real e inmediato. *López García v. López García,* 200 DPR 50, 63 (2018) citando a R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. Lexisnexis, 2017, Sec. 1202, pág. 166.

Es importante puntualizar que el interés en el pleito debe ser de "tal orden que impida la confección de un derecho adecuado sin afectar o destruir radicalmente los derechos a esa parte". *Allied MGMT. Group v. Oriental Bank*, 204 DPR 374, 390 (2020). Por tanto, la falta de parte indispensable es motivo para desestimar una reclamación, **sin embargo, a solicitud de parte interesada, el Tribunal puede conceder la oportunidad de traer al pleito a la parte originalmente omitida, siempre y cuando pueda adquirir jurisdicción sobre ella.** (Énfasis suplido) *Mun. de San Juan v. Bosque Real S.E.,* 158 DPR 743, 757 (2003).

El precepto procesal instituido en la Regla 16.1 de Procedimiento Civil, *supra,* forma parte del "esquema de rango constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley". *López García v. López García*, supra, págs. 63-64. Además, esta regla parte de la necesidad de incluir a una parte indispensable para que el decreto judicial emitido sea completo. Íd., pág. 64. Por otro lado, es

imperativo destacar que "la falta de parte indispensable en un pleito es un interés tan fundamental, que constituye una defensa irrenunciable que puede presentarse en cualquier momento durante el proceso". Íd., pág. 65. Incluso, los foros apelativos pueden y deben levantar *motu proprio* la falta de parte indispensable en un pleito, pues ello incide sobre su jurisdicción. Íd. **Lo anterior quiere decir que "la omisión de traer a una parte indispensable al pleito constituye una violación al debido proceso de ley".** (Énfasis nuestro) *Pérez Ríos et al. v. CPE,* supra, pág. 214.

La determinación final sobre si una parte debe acumularse por ser indispensable es una tarea que le corresponde a los tribunales que depende de las circunstancias particulares de cada caso. *RPR & BJJ Ex parte,* 207 DPR 389, 408 (2021). En ese sentido, dicha determinación exige una "evaluación jurídica de factores, tales como el tiempo, el lugar, el modo, las alegaciones, la prueba, la clase de derechos, los intereses en conflicto, el resultado y la formalidad". Íd., pág. 409. En conclusión, **"cuando en un pleito las partes no se han tomado la iniciativa de brindar a terceros ausentes la oportunidad de salvaguardar unos derechos que pueden resultar afectados, estos terceros deben ser acumulados como parte para poder dar finalidad a la adjudicación de la controversia medular".** (Énfasis suplido) *López García v. López García,* supra, pág. 65. Finalmente, es importante puntualizar que "no es suficiente que el ausente haya tenido la oportunidad de intervenir en el pleito, pues mientras no se le haya hecho parte, no se le puede privar de [sus] derechos mediante sentencia". Íd.

**-D-**

El emplazamiento es el mecanismo procesal mediante el cual se le notifica al demandado sobre la existencia de una reclamación incoada en su contra, para así garantizarle su derecho a ser oído y defenderse. *Rivera Marrero v. Santiago Martínez,* 203 DPR 462, 480

(2019). Además, a través del emplazamiento los tribunales adquieren jurisdicción sobre la persona del demandado, "de forma tal que este quede obligado por el dictamen que finalmente se emita". Íd.

La Regla 4 de Procedimiento Civil, 32 LPRA Ap. V, R. 4, establece dos maneras de diligenciar el emplazamiento, a saber, de forma personal o mediante edicto. *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1005 (2021). El emplazamiento personal es el método idóneo para adquirir jurisdicción. Íd. No obstante, por excepción y en circunstancias específicas, la referida regla permite que se emplace por edicto cuando la persona a ser emplazada no puede ser ubicada pese a las diligencias realizadas a tales efectos. Íd. Sobre este particular, la Regla 4.6 (a) de Procedimiento Civil, *supra*, establece lo siguiente:

> (a) Cuando la persona a ser emplazada esté fuera de Puerto Rico, o que estando en Puerto Rico no pudo ser localizada después de realizadas las diligencias pertinentes, o se oculte para no ser emplazada, o si es una corporación extranjera sin agente residente, y así se compruebe a satisfacción del tribunal mediante declaración jurada que exprese dichas diligencias, y aparezca también de dicha declaración, o de la demanda presentada, que existe una reclamación que justifica la concesión de algún remedio contra la persona que ha de ser emplazada, o que dicha persona es parte apropiada en el pleito, el tribunal podrá dictar una orden para disponer que el emplazamiento se haga por un edicto. No se requerirá un diligenciamiento negativo como condición para dictar la orden que disponga que el emplazamiento se haga por edicto.
>
> La orden dispondrá que la publicación se haga una sola vez en un periódico de circulación general de la Isla de Puerto Rico. La orden dispondrá, además, que dentro de los diez (10) días siguientes a la publicación del edicto se le dirija a la parte demandada una copia del emplazamiento y de la demanda presentada, por correo certificado con acuse de recibo o cualquier otra forma de servicio de entrega de correspondencia con acuse de recibo, siempre y cuando dicha entidad no posea vínculo alguno con la parte demandante y no tenga interés en el pleito, al lugar de su última dirección física o postal conocida, a no ser que se justifique mediante

una declaración jurada que a pesar de los esfuerzos razonables realizados, dirigidos a encontrar una dirección física o postal de la parte demandada, con expresión de éstos, no ha sido posible localizar dirección alguna de la parte demandada, en cuyo caso el tribunal excusará el cumplimiento de esta disposición.

## III.

Mediante su único señalamiento de error, los peticionarios sostuvieron que el TPI incidió al denegar con carácter definitivo el planteamiento de nulidad de sentencia por falta de parte indispensable. En primer lugar, manifestaron que en el curso del procedimiento de mediación de conflicto se le informó a San Carlos que el causante, el señor Curcic, tenía un hijo de una relación matrimonial previa, cuyo nombre era Stefan Curcic.

De igual forma, esbozaron que la existencia de aludido hijo constaba en la Resolución de Declaratoria de Herederos de fecha 1 de diciembre de 2016, dictada en el caso civil núm. E JV-2016-1005 (701) del Tribunal de Primera Instancia, Sala Superior de Caguas. Por lo que, razonaron que siendo el señor Stefan coheredero del señor Curcic era una parte indispensable que debió haber sido emplazado en el pleito, lo cual no ocurrió, en violación a su debido proceso de ley.

Por su parte, San Carlos argumentó que el TPI no erró al denegar el relevo de la Sentencia dictada. Adujo que, ante la negativa de la señora Torres de atender al emplazador y las diligencias infructuosas para localizar los miembros de la sucesión Curcic procedía el emplazamiento mediante edicto. En este sentido, sostuvo que dicho emplazamiento se realizó conforme a las exigencias del debido proceso de ley, la notificación adecuada y las Reglas de Procedimiento Civil, *supra*. Por tanto, arguyó que el TPI adquirió plena jurisdicción conforme a los requerimientos de nuestro ordenamiento jurídico.

De otra parte, manifestó que las primeras expresiones respecto al señor Stefan en el presente pleito se realizaron a finales del año 2024. Señaló que, la señora Torres había participado activamente de forma *pro se* en los procedimientos desde el 2019. Sin embargo, esgrimió que no fue hasta cinco (5) años luego de radicada la demanda que la señora Torres levantó la existencia de dicho heredero.

Ahora bien, reiteramos que una parte indispensable es "aquella de la cual no se puede prescindir y cuyo interés en la cuestión es de tal magnitud, que no puede dictarse un decreto final entre las otras partes sin lesionar ni afectar radicalmente sus derechos". *Pérez Ríos et al. v. CPE*, supra, pág. 213 (2023). Así, la falta de parte indispensable constituye una defensa irrenunciable que se puede presentar en cualquier momento durante los procedimientos. *López García v. López García*, supra, pág. 65.

Dicho esto, según surge del emplazamiento por edicto expedido el 15 de julio de 2019, el mismo fue dirigido a la señora Torres por sí y en virtud de la cuota viudal usufructuaria, Jane Doe, John Doe y Richard Doe como herederos del señor Curcic.[20] No obstante, de la Resolución de Declaratoria de Herederos emitida el 1 de diciembre de 2016, por el Tribunal de Primera Instancia, Sala Superior de Caguas, en el caso civil núm. EJV-2016-1005 (701), se declaró al señor Stefan y la señora Torres como los únicos y universales herederos del señor Curcic.[21]

A tales efectos, el señor Stefan era un heredero conocido para la fecha que se expidió el emplazamiento por edicto. Por tanto, debió haber sido identificado en dicho emplazamiento y resultaba impermisible adquirir jurisdicción de su persona por medio de nombres ficticios. A su vez, cabe añadir que mediante escrito

---

[20] *Véase*, Entrada Núm. 17, SUMAC TPI.
[21] *Véase*, Entrada Núm. 99, anejo 2, pág. 7, SUMAC TPI.

presentado el 27 de enero de 2025, San Carlos se allanó a los planteamientos de falta de parte indispensable presentados por la sucesión Curcic, a pesar de que ahora se opone a los mismos.

Aquilatados los argumentos de ambas partes y dadas las circunstancias del caso que nos ocupa, juzgamos que el señor Stefan no fue emplazado conforme a las exigencias de nuestro ordenamiento jurídico. Por lo cual, ante la ausencia de una parte indispensable en el pleito, el TPI carecía de jurisdicción para resolver la controversia. En vista de ello, revocamos el dictamen impugnado y declaramos Ha Lugar la solicitud de relevo de sentencia al amparo de la Regla 49.2 de Procedimiento Civil, *supra*, por falta de parte indispensable presentada por los peticionarios. En consecuencia, devolvemos el caso al TPI para que continue los procedimientos conforme a lo aquí resuelto.

**IV.**

Por los fundamentos antes expuestos, expedimos el auto de certiorari y ***revocamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones